THE PEOPLE on the relation of THOMAS R. COURTNEY, *v.* JESSE K. DUBOIS, auditor, etc.

### APPLICATION FOR A MANDAMUS.

Silver or gold coin of the United States, coined prior to the first day of June, 1853, is a legal tender for all debts, according to their nominal value, for any sums whatever.

To put a bank in default for non-payment of specie, the protest should aver that the specie tendered in payment of its bills, if greater in amount than five dollars, and of the denomination of quarters, was of the coinage authorized by the law of 1853. Without such averment, there is not an appearance of default to justify the auditor to proceed against the bank.

THOMAS COURTNEY, by his petition, showed that the bank of Ottawa, organized under the general banking law of 1851,

had issued bills for circulation. That on the 18th day of May, 1857, he was the legal holder of two bills of said bank of the denominations of five dollars each, that he, on that day, presented said bills for redemption to the cashier of the bank, and demanded coin therefor. That the cashier refused to redeem said bills in gold coin, or in any other manner than in quarter dollars of United States coinage, which the petitioner refused to receive. That petitioner caused a demand to be made by a notary public, and that the cashier of the bank refused to pay the notary anything but quarter dollars for the bills, and the notary thereupon protested. That he forwarded the bills and the protest to the auditor, requesting him to notify the bank to pay in conformity with the act of 1851, and the amendatory, act of 1857. That the auditor refused to notify the bank, because the tender by the officers of the bank was a legal one. Petitioner alleges that tender was illegal, and insists that the bills should have been redeemed in. gold coin. Prayed for an alternative *mandamus* against the auditor to show cause why he did not give the notice, etc.

The protest states that he " demanded payment of the bills, in specie, of the cashier, which he tendered in American quarter dollars, but refused to redeem the same in gold."

The auditor admitted the facts stated in the petition, and consented to waive the alternative *mandamus* and have it made peremptory if the court should be of opinion that the tender of the bank was not good.

GLOVER and COOK, for Relator.

LELAND and LELAND, Contra.

CATON, J. Assuming that the act of 14th February, 1857, is obligatory upon banks organized under the act of February 15, 1851, and that, by the act last passed, such banks are bound to redeem their notes when presented, in such kind of coin as the acts of congress declare shall be a legal tender for the payment of debts (which are questions upon which we choose to be further advised); and still the protest in this case does not put the bank in default, and the auditor was justified in refusing to proceed upon it, against the bank. The protest declares that the cashier of the bank tendered the amount of the notes presented "in American quarter dollars, but refused to redeem the same in gold," whereupon he protested, etc. This does not affirmatively put the bank in fault. An examination of the acts of congress will show that all silver and gold coin of the United States, coined before the first day of June, 1853, is a legal tender for all debts, no

matter what the denomination of the coin may be. It is unnecessary to go further back in the Federal legislation on this subject than the act of January 18, 1837. The eighth section of that act, fixes the standard of alloy or fineness of the gold and silver coin of the United States, at nine parts pure metal and one part alloy, and that the alloy of the silver coin shall be copper. The ninth section of that act fixes the weights of the several silver coins authorized to be coined, and makes all of them a legal tender for the payment of any sum whatever. The section reads, " That of the silver coins, the dollar shall be of the weight of four hundred and one-half grains; the half dollar of the weight of two hundred and six and one-fourth grains; the quarter dollar of the weight of one hundred and three and one-eighth grains; the dime, or tenth part of a dollar, of the weight of forty-one and a quarter grains; and the half dime or twentieth part of a dollar, of the weight of twenty grains and five-eighths of a grain. And that dollars, half dollars and quarter dollars, dimes and half dimes, shall be legal tenders of payment, according to their nominal value, for any sums whatever." Here it will be seen, that all of the silver coins have the same relative weights with their nominal value, and are made alike a legal tender for sums of any and all amounts. Under this law, a tender in quarter dollars or half dimes is as good as if made in dollars, or in gold. The next act which we find, which, so far as we are aware, remains now in force, is that of the 21st of February, 1853; which, however, did not go into operation until the first of June, 1853. This act makes no change in the alloy of the silver coins, but reduces the weight, and, consequently, the actual value of the half dollars, quarter dollars, dimes and half dimes, while the nominal value remains the same. The first section provides, "That from and after the first day of June, 1852 (3), the weight of the half dollar or piece of fifty cents, shall be one hundred and ninety-two grains, and the quarter dollar, dime and half dime, shall be, respectively, one-half, one-fifth, and one-tenth of the weight of the said half dollars." This, it will be seen, reduces the weight, and consequently, the actual value of the coin to be coined under its provisions, about five per cent. below that of the former coinage, and this, no doubt, explains the peculiar provisions of the next section, which is this: "That the silver coins issued in conformity with the above section, shall be legal tenders in payment of debts for all sums not exceeding five dollars." There is no room for contending that this section is not confined to coin, coined under the provisions of the first section, for it is so expressly declared in as plain terms as our language can make it. There can be no doubt that it was

the design of congress to leave the old coin, of really greater value than these, a legal tender for all sums, as it had been fixed by the law of 1837, and to compel the creditor to take these light coins to the amount of five dollars only, leaving all dollars, the weight of which was not reduced by this act, and all smaller pieces of the old coinage, of the same relative weight with the dollar, unaffected by this second section, and a legal tender for all amounts, as it was declared by the law of 1837.

Tested by the law as we thus find it, the protest does not show affirmatively, that the bank was in default. It did tender for the notes presented their amount, ten dollars, in American quarter dollars; and it does not appear that they were of the coinage under the law of 1853; which should have been shown in order to have put the bank in default. It had a right to pay any amount in small coins, of a date previous to that act, which were of the same relative weight and actual value with the American dollar, and by the act of congress, just as good a tender. It is for the applicant, affirmatively to show, that the bank refused to pay in the legal coin of the United States, before he can ask the auditor to proceed and coerce the payment of the notes. I repeat, we are not prepared to express any opinion, whether a tender of quarter dollars of the coinage under the law of 1853, would have been sufficient or not.

The application for a *mandamus* must be refused.

*Application denied.*